COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Moon, Judge Annunziata and Senior Judge Duff
Argued at Alexandria, Virginia


DARRYL ANDRE GREGORY

v.     Record No. 0625-95-4              MEMORANDUM OPINION[*]
                                      BY JUDGE CHARLES H. DUFF
COMMONWEALTH OF VIRGINIA                    MAY 21, 1996

          FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
                     Donald M. Haddock, Judge

          Susan L. Korfanty (Office of the Public
          Defender, on brief), for appellant.

          Margaret Ann B. Walker, Assistant Attorney
          General (James S. Gilmore, III, Attorney
          General, on brief), for appellee.


     Darryl Andre Gregory (appellant) appeals from a judgment of

the Circuit Court of the City of Alexandria finding him guilty of

distributing cocaine.  Appellant challenges the trial court's

ruling that the police officer's identification of him was

reliable and admissible.  He further argues that the trial court

should have required the Commonwealth to disclose the identity of

two individuals who accompanied the police officer when she

contacted the person who sold drugs to her.  We disagree and

affirm appellant's conviction.

                              Facts

     "On appeal, we review the evidence in the light most

favorable to the Commonwealth, granting to it all reasonable

---

[*]Pursuant to Code § 17-116.010, this opinion is not
designated for publication.

inferences fairly deducible therefrom." Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987).

So viewed, the facts showed that on October 15, 1992, Officer Renee Holden, an experienced police officer, was involved in an undercover narcotics operation in Alexandria. During daylight hours, Holden saw a person she later identified as appellant standing on the front porch of an apartment building. At the time, Holden was accompanied by two unidentified individuals. Holden and appellant made eye contact, and appellant asked if Holden was "looking for anything." Holden said that she was. Holden and the two individuals proceeded onto the porch. Holden told appellant she was looking for two "20s," meaning twenty dollar pieces of crack cocaine. Appellant and Holden went inside the doorway of the building.

Holden gave money to appellant, and he gave her two pieces of cocaine in exchange. Holden asked if appellant was "always out here." Appellant told her that he was, and that his name was "Darryl." During the three to four minutes of the transaction, Holden focused upon appellant's face and clothing so she could later identify him.

Immediately after the purchase, Holden left the area with the two people who had accompanied her there. She contacted Detective George King by telephone and told him what had occurred. Holden described the suspect as a black male who was "not too tall" and was wearing a blue horizontally striped shirt,

dark blue jeans, a silver chain link belt, and black and white Adidas tennis shoes. Holden told King the location of the transaction and that the seller's name was "Darryl."

King arrived in the area of the sale seven to ten minutes after his conversation with Holden. King saw appellant, whom King knew was named "Darryl." Appellant was wearing clothing that exactly matched the description Holden had provided. No one in the vicinity was dressed similarly.

The next day, King showed Holden two photographs, one of them of appellant. Holden selected appellant as the person who sold cocaine to her the day before.

At trial, Holden stated that her identification of appellant as the one who sold the cocaine was based upon her recollection of the event, and that she was "one hundred percent" certain about the identification.

### The Identification Issue

In Hill v. Commonwealth, 2 Va. App. 683, 693, 347 S.E.2d 913, 918 (1986), this Court set forth the applicable standards for determining if the trial court should have suppressed an out-of-court identification:

> Such evidence will be admitted if either (a) the identification was not unduly suggestive, or (b) the procedure was unduly suggestive, but the identification is nevertheless so reliable, in accordance with the factors noted in [Neil v.] Biggers [, 409 U.S. 188 (1972),] and [Manson v.] Brathwaite [, 432 U.S. 98 (1977)], that there is no substantial likelihood of misidentification.

Factors affecting the reliability of an identification include

> the opportunity of the witness to view the
> criminal at the time of the crime, the
> witness' degree of attention, the accuracy of
> the witness' prior description of the
> criminal, the level of certainty demonstrated
> by the witness at the confrontation, and the
> length of time between the crime and the
> confrontation.

Biggers, 409 U.S. at 199-200.  In evaluating reliability, courts must look to the totality of the circumstances present in a given case.  See McCary v. Commonwealth, 228 Va. 219, 234, 321 S.E.2d 637, 644 (1984); Doan v. Commonwealth, 15 Va. App. 87, 97, 422 S.E.2d 398, 404 (1992).

Appellant argues that Holden's identification of him was obtained through an unduly suggestive procedure compelling her to choose one of the photographs.  There is no "per se rule of exclusion" applied in assessing the suggestiveness of an identification procedure.  Bryant v. Commonwealth, 10 Va. App. 421, 425, 393 S.E.2d 216, 218 (1990).  Because Holden viewed two photographs, the procedure here was one step removed from that employed in Wise v. Commonwealth, 6 Va. App. 178, 184, 367 S.E.2d 197, 200-01 (1988), where this Court found that the display of a single photograph was unduly suggestive.  Unlike the display of a single photograph it may not be said that the display of two photographs carries with it the suggestion that a particular photograph depicts the suspect.  Furthermore, there is no evidence that, in showing Holden the photographs, King exerted any pressure upon her to make an identification.

Assuming for the sake of argument that the identification procedure contained an element of suggestiveness, the record establishes the reliability of the identification nonetheless. Knowing she would have to identify the drug seller later, Holden observed him for several minutes under favorable lighting conditions. Her description of the perpetrator's physical attributes and clothing, including the brand of his shoes, demonstrated her attention to detail. King saw appellant minutes after the transaction, and he matched the description Holden had provided. Furthermore, the time lapse between the identification and the crime was minimal, only one day. Holden harbored no doubt concerning the accuracy of the identification.

Under the totality of the circumstances, Holden's identification of appellant was so reliable that no substantial likelihood of misidentification existed. Thus, the trial court did not err in ruling that Holden's out-of-court identification of appellant was admissible.

### The "Informant" Identity Issue

Characterizing the two individuals who accompanied Holden on the day of the sale as "informants," appellant argues the trial court should have required the Commonwealth to disclose their identities because their testimony could have cast doubt upon the Commonwealth's evidence proving that appellant sold Holden cocaine. As a general rule, "the identity of a person furnishing the prosecution with information concerning criminal activities

is privileged." Gray v. Commonwealth, 233 Va. 313, 328, 356 S.E.2d 157, 165, cert. denied, 484 U.S. 873 (1987). In Roviaro v. United States, 353 U.S. 53 (1957),

> the Supreme Court established an exception to this general rule, in federal cases, and held that "where the disclosure of an informer's identity . . . is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege [of nondisclosure] must give way." The Court stated that "no fixed rule with respect to disclosure is justifiable" and explained that "the problem is one that calls for balancing the public interest in protecting the flow of information [to the police] against the individual's right to prepare his defense."

Daniel v. Commonwealth, 15 Va. App. 736, 739-40, 427 S.E.2d 423, 425 (1993) (citations omitted).

The privilege of nondisclosure applies to protect the identity of those who actually provide the police with information about criminal activities. See Gray, 233 Va. at 328, 356 S.E.2d at 165. Indeed, the privilege is referred to as "the informer's privilege." Lanier v. Commonwealth, 10 Va. App. 541, 550, 394 S.E.2d 495, 501 (1990). In distinguishing between an "informant" and a "tipster" for purposes of performing a Roviaro analysis, this Court has presupposed that the person whose identity the defendant sought to discover gave the police information leading to the defendant's arrest. See Stephenson v. Commonwealth, 18 Va. App. 247, 250, 443 S.E.2d 173, 175 (1994); Keener v. Commonwealth, 8 Va. App. 208, 212, 380 S.E.2d 21, 24 (1989). Whereas the role of a "tipster" does not extend beyond

-6-

that of simply providing information, an "'informant' is usually a person who participates in the transaction that results in the arrest and who the record shows could relate testimony helpful to the defense." Stephenson, 18 Va. App. at 250, 443 S.E.2d at 175.

The evidence does not demonstrate that the involvement of the two witnesses in this case rose even to the level of a "tipster," whose identity generally is not subject to disclosure. See Daniel, 15 Va. App. at 740, 427 S.E.2d at 425. Although appellant had the opportunity to elicit such evidence at the suppression hearing, the record does not show that the two witnesses in this case provided the police with any information, much less information contributing to appellant's arrest. The two witnesses simply accompanied Holden when she first approached the seller, were present when she discussed the sale with him, and departed with Holden after she purchased the drugs. The two individuals did not participate in the transaction, did not observe it, and did not instigate it. Thus, the two witnesses were not "informants" with respect to appellant, and the "informer's privilege" had no application here. For this reason, the trial court did not err in refusing to require the Commonwealth to disclose the identities of the two witnesses.[1]

---

[1]The Commonwealth, of course, was not relieved of its responsibility to provide the defense with material exculpatory evidence. See Brady v. Maryland, 373 U.S. 83, 87 (1963). However, the issue of whether the Commonwealth possessed exculpatory evidence pertaining to the two witnesses is not before us, and we do not address it.

For the foregoing reasons, appellant's conviction is affirmed.

Affirmed.