COURT OF APPEALS OF VIRGINIA


Present: Judges Benton, Elder and Frank
Argued at Chesapeake, Virginia


KENNETH EUGENE BRITT

                                    MEMORANDUM OPINION* BY
v.    Record No. 2795-99-1           JUDGE LARRY G. ELDER
                                      DECEMBER 19, 2000
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
                    Lydia Calvert Taylor, Judge

            Kevin M. Diamonstein for appellant

            Marla Graff Decker, Assistant Attorney
            General (Mark L. Earley, Attorney General, on
            brief), for appellee.


     Kenneth Eugene Britt (appellant) appeals from his

conviction for possession of cocaine in violation of Code

§ 18.2-250, entered on his conditional plea of guilty.  On

appeal, he contends the trial court erroneously denied his

motion to suppress because the officer had neither reasonable

suspicion to detain him nor probable cause to justify the search

in which he found cocaine on appellant's person.  We hold the

officer had first reasonable suspicion to question and then

probable cause to arrest appellant for trespassing and that the

search which yielded the cocaine was a valid search incident to

_____

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

appellant's arrest for trespassing.  Therefore, we affirm appellant's conviction.

At a hearing on a defendant's motion to suppress, the Commonwealth has the burden of proving the challenged action did not violate the defendant's constitutional rights.  See Simmons v. Commonwealth, 238 Va. 200, 204, 380 S.E.2d 656, 659 (1989). On appeal, we view the evidence in the light most favorable to the prevailing party, here the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.  See Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991).  "[W]e are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them[,] and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers."  McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (en banc) (citing Ornelas v. United States, 517 U.S. 690, 699, 116 S. Ct. 1657, 1663, 134 L. Ed. 2d 911 (1996)).  However, we review de novo the trial court's application of defined legal standards such as reasonable suspicion and probable cause to the particular facts of the case.  See Ornelas, 517 U.S. at 699, 116 S. Ct. at 1663.

"Fourth Amendment jurisprudence recognizes three categories of police-citizen confrontations:  (1) consensual encounters, (2) brief, minimally intrusive investigatory detentions based

upon specific, articulable facts, commonly referred to as Terry stops, see Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), and (3) highly intrusive arrests and searches founded on probable cause." Wechsler v. Commonwealth, 20 Va. App. 162, 169, 455 S.E.2d 744, 747 (1995). In order to justify a Terry stop, "an officer must have a 'reasonable and articulable suspicion of criminal activity on the part of the defendant . . . .'" Hatcher v. Commonwealth, 14 Va. App. 487, 490, 419 S.E.2d 256, 258 (1992) (quoting Commonwealth v. Holloway, 9 Va. App. 11, 15, 384 S.E.2d 99, 101 (1989)). An officer who develops reasonable suspicion that criminal activity is occurring may stop a person "'in order to identify him, to question him briefly, or to detain him briefly, while attempting to obtain additional information'" in order to confirm or dispel his suspicions. DePriest v. Commonwealth, 4 Va. App. 577, 585, 359 S.E.2d 540, 544 (1987) (quoting Hayes v. Florida, 470 U.S. 811, 816, 105 S. Ct. 1643, 1647, 84 L. Ed. 2d 705 (1985)). "Probable cause exists where 'the facts and circumstances within [the arresting officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." Brinegar v. United States, 338 U.S. 160, 175-76, 69 S. Ct. 1302, 1310-11, 93 L. Ed. 1879 (1949) (quoting Carroll v. United States, 267 U.S.

- 3 -

132, 162, 45 S. Ct. 280, 288, 69 L. Ed. 543 (1925)). Our review of the existence of reasonable suspicion and probable cause involves application of an objective rather than subjective standard. See, e.g., Whren v. United States, 517 U.S. 806, 812-13, 116 S. Ct. 1769, 1774, 135 L. Ed. 2d 89 (1996).

Here, assuming without deciding the encounter between Officer Donnelly and appellant was not consensual, the evidence establishes that Donnelly had reasonable suspicion to detain appellant briefly in order to determine whether he was trespassing. The management of the private apartment complex where Donnelly encountered appellant had experienced repeated problems with trespassing and drug trafficking on their premises and had made a written request to the Norfolk Police Department to help them address the problem by arresting any violators. At least five months earlier, the management had posted prominent "No Trespassing" signs in a location visible to anyone traversing the private property between the two buildings.

When Officer Donnelly saw appellant on the property between the two buildings, he knew appellant did not live there. As a result, he had reasonable suspicion to believe appellant was trespassing, and he was entitled to detain appellant briefly to determine whether he was, in fact, a trespasser or a legitimate guest on the premises. When appellant told Donnelly he was visiting the woman with whom he was standing, Maria Elliot, and

refused to answer any of Donnelly's other questions, Donnelly had probable cause to arrest appellant for trespassing because he recognized Elliot and knew she also did not reside in the apartment complex. Thus, Donnelly quickly developed probable cause to arrest appellant for trespassing, and he was entitled to search appellant pursuant to that arrest. See, e.g., DePriest, 4 Va. App. at 583, 359 S.E.2d at 543.

Officer Donnelly initially intended to issue appellant a summons for the trespassing offense and would not have been entitled to search appellant incident to that summons in the absence of proof of a need to disarm appellant or preserve evidence of the violation for which the summons was issued. See Lovelace v. Commonwealth, 258 Va. 588, 594, 522 S.E.2d 856, 859 (1999) (citing Knowles v. Iowa, 525 U.S. 113, 115-18, 119 S. Ct. 484, 486-88, 142 L. Ed. 2d 492 (1998)). However, the trial court found credible Officer Donnelly's testimony that he subsequently determined to effect a full custodial arrest for trespass because appellant said he had no identification with him and because departmental policy required Donnelly to effect a full custodial arrest under those circumstances. Because Donnelly did not discover appellant's identification until after he had discovered cocaine in appellant's pocket, Donnelly's actions in searching appellant pursuant to his custodial arrest for trespassing were objectively reasonable under the Fourth

- 5 -

Amendment.  Therefore, the trial court did not err in denying appellant's motion to suppress the fruits of the search conducted incident to that arrest.[1]

For these reasons, we affirm appellant's conviction for possession of cocaine.

                                                  Affirmed.

---

[1] We need not decide whether any of Officer Donnelly's observations prior to his discovery of cocaine in appellant's pocket provided reasonable suspicion or probable cause to believe appellant had committed a drug offense.

Benton, J., dissenting.

A police officer may detain a person in a "Terry stop" only if the officer possesses articulable facts supporting a reasonable suspicion that the person has committed a criminal offense, is engaging in a criminal offense, or is about to engage in a criminal offense. See Terry v. Ohio, 392 U.S. 1, 21-22 (1968). "[A] reasonable suspicion [is one, which is] based on objective facts, that the individual is involved in criminal activity." Brown v. Texas, 443 U.S. 47, 51 (1979). The officer in this case had no objective facts on which to conclude that Kenneth E. Britt had trespassed or was about to trespass.

Code § 18.2-119 provides in pertinent part that "[i]f any person without authority of law goes upon or remains upon the lands, buildings or premises of another, or any portion or area thereof, after having been forbidden to do so, either orally or in writing . . . or after having been forbidden to do so by a sign or signs posted . . . shall be guilty of a Class 1 misdemeanor." The evidence proved the officer had no information that Britt had been forbidden, either orally or in writing, to walk upon the walkway that led from the public sidewalk toward the apartments, the parking lot, and beyond. Thus, the posted signs provide the only possible justification for stopping Britt.

The evidence in this case further proved that the walkway intersected and was perpendicular to the public sidewalk in an urban area. Parallel to each side of the walkway, at an undescribed distance from the walkway, were apartment buildings. On each apartment building was "the standard sign, no-trespassing signs." The evidence does not otherwise establish the content of the signs and clearly does not prove that the signs forbad persons from traversing the walkway. Although the evidence established that the walkway on which Britt was standing was not the public sidewalk, it was a location open to the public. No evidence proved that the sign on the building or any other sign informed Britt that he was not privileged to stand or walk on the walkway.[2] See Jones v. Commonwealth, 18 Va. App. 229, 232, 443 S.E.2d 189, 191 (1994); Reed v. Commonwealth, 6 Va. App. 65, 70, 366 S.E.2d 274, 278 (1988) (noting that the case law in Virginia has uniformly construed the statutory offense of criminal trespass to require a willful trespass).

---

[2] Although I recognize that the Terry standard is far short of the requirement of proof beyond a reasonable doubt to convict of a criminal offense, I believe it is significant to note that the record establishes Britt was acquitted of the charge of trespass. Certainly, if the evidence in the failed criminal prosecution was lacking in proof of the content of the "No Trespassing" sign as in this case, no cause arose to stop Britt or to prosecute him for trespass.

To have a reasonable, articulable suspicion of trespass, a police officer must observe something more than a person standing on a walkway that is generally and ostensibly open to the use of the public. The officer did not observe Britt leave or approach any of the buildings. Terry does not allow police officers to detain persons at random to inquire whether they have broken the law simply by leaving the public sidewalk to enter upon a privately owned walkway in a public location.

The United States Supreme Court stated the following in a similar context:

> The flaw in the State's case is that none of the circumstances preceding the officers' detention of appellant justified a reasonable suspicion that he was involved in criminal conduct. [The officer] . . . testified at appellant's trial that the situation . . . "looked suspicious," but he was unable to point to any facts supporting that conclusion. There is no indication in the record that it was unusual for people to be [on the walkway]. The fact that appellant was in a neighborhood frequented by drug users, standing alone, is not a basis for concluding that appellant himself was engaged in criminal conduct. In short, the appellant's activity was no different from the activity of other pedestrians in that neighborhood. When pressed, [the officer] . . . acknowledged that the only reason he stopped appellant was to ascertain [whether he was an invitee]. The record suggests an understandable desire to assert a police presence; however, that purpose does not negate Fourth Amendment guarantees.
>
> In the absence of any basis for suspecting appellant of misconduct, the balance between the public interest and

> appellant's right to personal security and
> privacy tilts in favor of freedom from
> police interference.

Brown, 443 U.S. at 52 (footnote omitted).

Generally, government officials are barred by the Fourth Amendment "from undertaking a search or seizure absent individualized suspicion." Chandler v. Miller, 520 U.S. 305, 308 (1997). Absent proof that some sign barred persons from using the right of way that abuts the public walkway, the evidence fails to negate the premise that the walkway was a location open to the public. Thus, the evidence permits only the conclusion that the officer acted pursuant to a general scheme to stop anyone without particularized suspicion.

The United States Supreme Court has "expressly identified this 'right to remove from one place to another according to inclination' as 'an attribute of personal liberty' protected by the Constitution." Chicago v. Morales, 527 U.S. 41, 53 (1999) (quoting Williams v. Fears, 179 U.S. 270, 274 (1900)); see also Papachristou v. Jacksonville, 405 U.S. 156, 164 (1972)). To permit a police officer to make a "Terry" detention because he has a subjective belief, unsupported by objective facts, that an inquiry may prove the person is not an invitee improperly permits arbitrary and discriminatory state action. This ruling gives absolute discretion to police officers to detain on the hunch of "trespass" any person who steps off the public

- 10 -

sidewalk.  <u>Terry</u> instructs, however, that a "hunch" is an insufficient basis to detain a person.  <u>See</u> 392 U.S. at 27; <u>see also</u> <u>Moss v. Commonwealth</u>, 7 Va. App. 305, 308-09, 373 S.E.2d 170, 172 (1988).  "[S]uch a standardless sweep [impermissibly] allows policemen . . . to pursue their personal predilections." <u>Smith v. Goguen</u>, 415 U.S. 566, 575 (1974).

For these reasons, I would hold that the officer lacked a reasonable basis to detain Britt, and I would reverse the conviction.  I dissent.